12570

EPWORTH ORPHANAGE v. STRANGE *ET AL.*
(Two Cases)

(146 S. E., 414)

*Messrs. Carlton DuRant,* and *C. Birnie Johnson* for appellant,

*Mr. Jas. M. Patterson,* for respondents,

January 30, 1929.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

These two actions were tried together; the complaints and answers are the same, with the exception of the names of the defendants and descriptions of the properties involved.

The first was brought to set aside conveyances from Mrs. M. F. Strange, to her daughter Olivia S. Palmer, of two certain pieces of real estate: (1) A tract of land containing 99 acres, and (2) a tract of land containing 259 acres, dated September 7, 1922, the expressed consideration of the first being $......, and of the second $......, as void under the Statute of Elizabeth.

The second was brought to set aside conveyances from Mrs. M. F. Strange, to her daughter Alma S. Farmer, of two certain pieces of real estate: (1) A lot containing one acre in the town of Allendale, and (2) a tract of land containing 122 acres, dated September 7, 1922, the expressed consideration of the first being $6,000 and of the second $5,000, as void under the Statute of Elizabeth.

The allegation in each complaint was that the deeds referred to were without consideration and were made to hinder, delay, and defraud the plaintiff and other creditors of their lawful debts.

The allegations in each answer, on the part of the defendants Mrs. Strange, Mrs. Palmer, and Mrs. Farmer, were to the following effect: Mrs. Strange alleged that the sales to her daughters were made *bona fide,* for value, for the purpose of raising money with which to margin cotton which she had bought and was holding for better prices; she denied the allegations of fraud. Mrs. Palmer and Mrs. Farmer, in separate answers, alleged: "That on or about the 7th day of September, 1922, her mother and codefendant, Mrs. M. F. Strange, being pressed for money attempted to sell her property for cash, and that this defendant and her sister, Mrs. Olive S. Palmer, realizing that the attempted sale was of the entire property held by their mother, including their

home, offered to purchase from her the said property and divide the same between them. That their offer was accepted and separate deeds made to each of them and for the consideration named in the said deeds *which was paid by this defendant for her part,"* and her sister, Mrs. Olive S. Palmer, on her part. They also denied the allegations of fraud.

The cases were referred by consent to W. D. Connor, Esq., as special Master, to hear and determine all issues of law and fact. He filed a report (which is not set forth in the transcript), finding that the deeds were for a valid consideration and not in fraud of creditors, and recommended that the complaints be dismissed.

The cases were then heard by his Honor, Judge Mauldin, at October term, 1926, upon exceptions by plaintiff to the report of the special Master. He filed a decree (not dated in the transcript), confirming the report of the special Master in all respects and dismissing the complaints. From this decree the plaintiff has appealed.

It appears that on January 29, 1920, Mrs. Strange bought a tract of land from the plaintiff, Epworth Orphanage, for $3,038.90; paid cash 20 per cent. thereof, $607.78, and gave her bond or note for the balance of the purchase money, $2,-431.12, payable in eight annual installments (with interest, we assume), secured by a mortgage of the land. (This tract of land is not involved in the present litigation.)

She defaulted in the payment of the installments and interest for 1921 and 1922, and in the payment of taxes.

On October 18, 1921, the attorney of the plaintiff wrote Mrs. Strange for the past-due interest, and asking about the taxes for 1920, which were reported to have been unpaid. No reply appears to have been made to this communication.

On June 30, 1922, the attorney wrote Mr. Strange that nothing had been received on account of interest and taxes and threatened foreclosure of the mortgage.

On September 5, 1922, another attorney of the plaintiff,

Mr. Johnson, now Circuit Judge, with whom summons and complaint had been left for service, wrote Mr. Strange requesting a substantial payment upon the debt, and threatening immediate commencement of the suit for foreclosure.

On September 7, 1922, Mr. Strange wrote Mr. Johnson, "hope to be able to get to your office at least by tomorrow or next day and see what arrangements we can make."

On that same day, September 7, 1922, the deeds from Mrs. Strange to her daughters were executed and delivered and promptly recorded.

It appears that the plaintiff had no direct notice of the execution of these conveyances for nearly a year, and when it did receive notice proceedings were instituted, on August 3, 1923, for the purpose of foreclosing the mortgage upon the land which had been purchased from it by Mrs. Strange, hereinbefore referred to. Judgment of foreclosure was rendered in September following; the land was sold in October and was purchased by Dr. Palmer, husband of one of the daughters of Mrs. Strange, the defendant herein Olivia S. Palmer. A deficiency judgment of $1,544.16 was entered promptly against Mrs. Strange, execution issued, *nulla bona* return made, and these actions commenced in November following, 1923.

These are conveyances from a mother, heavily in debt, of practically all of her tangible property to her daughters, in the face of a threatened suit for foreclosure and almost certainly of a deficiency judgment.

The rule in reference to conveyances from a father to a child or from a mother to a child, instances of the closest relationship, the burden is upon the grantee to show that the conveyance was *bona fide* and upon a valuable consideration in law.

In *Richardson v. Rhodus,* 14 Rich., 95, which was an action by a creditor to set aside as fraudulent a conveyance from a father to his daughter, the Court said: "If * * * the defendant, Emaline Rhodus, shall be able to show that the conveyance * * * was upon a consideration valuable in

law, *and the onus of doing this is upon her,* or that the debt existing at its date," etc.

"Where an insolvent sells property to a near relative, the burden of showing a * * * transaction for value is on the purchaser." *Grambling v. Dickey,* 118 N. C., 986, 24 S. E., 671.

The explanations of the several parties to these transactions are unsatisfactory to a degree. It will be borne in mind, in considering these explanations, that the explanation given by Mrs. Strange in her answer, filed shortly after the suit was commenced, was that she was holding a lot of cotton for better prices and needed the cash money to carry it further, and that she in good faith sold the properties to her daughters for cash and used the money for the purpose indicated. The daughters in their answers in effect substantiate the declaration of their mother; that they knew she was hard pressed for money and wanted to sell the property which was "the entire property held by their mother", for cash, and that they made an offer for it and purchased it for cash, dividing it between them.

It is most remarkable that when these ladies, the mother and the two daughters, took the stand as witnesses in support of the title, it developed that not one of them had the slightest knowledge of a single event preceding the execution and delivery of the conveyances, or was able to throw the faintest ray of light upon what actually occurred. Mrs. Strange's affairs were in the hands of her husband; he engineered the whole transaction; Mrs. Palmer's and Mrs. Farmer's affairs were similarly in the hands of their respective husbands, and neither of them appears to have known "what it was all about." They were individually and collectively unable to give any information of a satisfying nature.

As the three husbands were managing the affairs of their respective wives, it devolved upon them, or was assumed by

them, to protect the titles by testimony, with little regard to the explanations made in the answers of the wives.

Mrs. Strange knew nothing about the alleged bargain of sale to her daughters; she did not know the price at which they bought or what was paid on the purchases; she did not know where the deeds were signed up or who were the witnesses; all had been attended to by her husband.

Mrs. Farmer knew nothing about the $6,000 named consideration for the deed to the home place; she knew nothing of any debt due by her mother to Mr. Farmer; she did not know where she was when the deed was signed; she did not know that she had ever seen the deed to either piece of property conveyed to her; she did not know what, if anything, she had paid her mother for the land, although she had stated in her answer that she had helped raise the money to relieve the financial pressure upon her mother.

Mrs. Palmer, it appears, was not called as witness, neither was Mr. Strange.

Dr. Palmer and Mr. Farmer give an entirely different account of the consideration for the deeds from that contained in the answers of the defendants; each fixes the consideration as of large indebtednesses due by Mrs. Strange to them, not to the daughters, explanations of which are not satisfactory.

It does not appear that it will serve any useful purpose to further discuss the evidence. It has been carefully considered, and the Court has come to the conclusion that the defendants have not borne the burden imposed on them by the law of showing the *bona fide* of the conveyances.

The judgment of this Court is that the judgment of the Circuit Court be reversed, and that the case be remanded to that Court, with directions to enter a decree granting the prayer of the complaint in each case and making such administrative orders as may be necessary to carry it into effect.

Mr. Chief Justice Watts, and Messrs. Justices Blease, Stabler and Carter concur.