## 13008

### EPWORTH ORPHANAGE OF THE SOUTH CAROLINA CONFERENCE v. STRANGE *ET AL.*

(155 S. E., 594)

*Messrs. Durant & Sneeden* and *Thomas H. Moffatt,* for appellant,

*James M. Patterson* and *Searson & Searson,* for respondent,

October 24, 1930.

The opinion of the Court was delivered by MR. JUSTICE STABLER.

On January 29, 1920, the defendant Strange purchased from the plaintiff, Epworth Orphanage, a tract of land for $3,038.90, paying part in cash and securing the balance of the purchase money by a mortgage of the land. On September 7, 1922, no part of this indebtedness having been paid, Mrs. Strange, who owned other real estate, conveyed to her daughter, Olivia S. Palmer, defendant in this case, two tracts of land, one of which contained 259 acres; and at the same time she conveyed to her daughter, Alma S. Farmer, two other lots

or tracts. On March 17, 1923, Mrs. Palmer borrowed from the Federal Land Bank of Columbia, $2,200.00, securing the debt by a mortgage of the 259-acre tract. On August 3, 1923, the orphanage, having learned of the conveyances of Mrs. Strange to her daughters, instituted proceedings for the foreclosure of its mortgage. The land was sold, and a deficiency judgment of $1,044.16 was entered up against Mrs. Strange. Thereafter execution was issued and a *nulla bona* return made. On May 3, 1924, the plaintiff began this action against Mrs. Strange and Mrs. Palmer, and at the same time another against Mrs. Strange and Mrs. Farmer, for the purpose of having the deeds declared fraudulent and void as to plaintiff and canceled of record. Mrs. Strange and Mrs. Palmer filed answers denying all allegations of fraud or fraudulent intent.

The land bank was not made a party when suit was instituted, but thereafter was brought in, on motion of counsel for the defendants, by order of Judge Townsend dated May 8, 1924. The complaint was then amended by adding the bank as a party and inserting a paragraph as follows:

"10. That the plaintiff is informed and believes that the Federal Land Bank of Columbia has or claims some interest in or to some of the lands herein described and is made a party defendant that it may come in and set up any rights it may have therein."

Service was made on the defendant bank on June 4, 1924. It did not answer the complaint, but, after some correspondence between its attorney and plaintiff's attorneys, an agreement was made in writing that the bank would not file an answer in the cases or participate in the proceedings, and that plaintiff's attorneys would take no decree or order in the cases that would in any manner affect the indebtedness to the bank or the mortgage securing same, but that such mortgage should remain a valid first lien on the lands described therein. It does not appear that the attorneys for the defendants Strange and Palmer, knew anything of this agree-

ment at the time. The cases were later referred to a special referee, who found that the deeds were not fraudulent and recommended that the complaints be dismissed. On exceptions, Judge T. J. Mauldin confirmed the report as to both law and fact, whereupon the plaintiff appealed to this Court, which, on January 30, 1929, reversed the decree and gave judgment as follows:

"The judgment of this Court is that the judgment of the Circuit Court be reversed, and that the case be remanded to that Court with directions to enter a decree granting the prayer of the complaint in each case and making such administrative orders as may be necessary to carry it into effect." 148 S. C., 500, 146 S. E., 414, 416.

The land bank is not referred to in the report of the referee, the decree of Judge Mauldin, or the opinion of the Supreme Court. In the record for appeal to this Court, no mention was made of the bank or of any lien it might have.

Following the decision of this Court, the plaintiff prepared a proposed decree, formally consented to by the land bank, which directed that the deeds be set aside, the property sold, and the funds derived from the sale applied upon the orphanage debt; it also provided that the mortgage executed by the defendant Palmer to the bank be adjudged and decreed a first lien on the premises therein described, and that the mortgage and the debt secured thereby should not in any manner be affected by the terms of the decree.

Judge Featherstone, to whom application was made, declined to sign the proposed decree, for the reason that, as stated by him, under the judgment of the Supreme Court he could only pass such administrative orders as might be necessary to carry that judgment into effect. Under this view, he made a decree, dated April 24, 1929, adjudging the deeds to be fraudulent and void, and directing that they be canceled of record in the office of the Clerk of Court of Common pleas for Allendale County. He also embodied in the order a statement that, as there was no mention of the

Federal Land Bank in the decree of Judge Mauldin, or in the decision of the Supreme Court, he did not see that he had anything to do with the bank or any lien claimed by it.

On April 29, 1929, the bank, having been advised of what had been done, presented to · Judge J. Henry Johnson its petition, praying that the decree of Judge Featherstone be modified so that the lien of its mortgage might be protected; and that, should that prayer be denied, the decree, in so far as it affected the lien of the mortgage, be set aside upon the ground that it was obtained against the defendant bank by surprise and through its mistake and excusable neglect, and the bank be allowed to file its answer and present its defense and to have its day in Court for the presentation of its rights in the premises. Certain supporting papers, in the form of affidavits, letters, and the agreement between the attorneys heretofore referred to, were filed with the petition. Judge Johnson adjudged himself disqualified to act on the petition for the reason that at one time, while a practicing attorney, he was employed by the plaintiff to represent it in the collection of the debt owing it by Mrs. Strange, and required the defendants to show cause before Judge M. M. Mann of the First Circuit, at St. Matthews, on May 2, 1929, why the prayer of the petition should not be granted.

The defendant Strange both demurred and made return to the petition, alleging that the Court was without jurisdiction or authority to review and correct the final judgment, rendered in open Court, from which no party to the cause had appealed; and that the land bank had already had its day in Court, and the things set up in the petition were *res adjudicata* so far as she was concerned. Mrs Palmer also made return to the petition, pleading practically the same defenses.

After a hearing on the rule, Judge Mann, on May 25, 1929, passed an order sustaining the contention of the repondents that he had no jurisdiction at chambers to grant the relief prayed for, and referring the matter to the pre-

siding Judge at the next ensuing term of the Court of Common Pleas for Allendale County.

The attorneys for the land bank then applied to Judge Featherstone after he had left the Fourteenth Circuit, "to correct his decree, upon the ground that the same by clerical error affected adversely the lien" of the bank He thereupon filed a supplemental order—expressing doubt as to his authority to do so—in which he stated that he had passed upon no rights of the land bank in his original decree, for the reason that the bank was not before him and he could not do so; that, "if the bank had any rights in the premises, it still has them. It was most certainly not my intention by the language employed, to adjudicate any of its rights, nor do I think that the order properly understood, can have that effect."

The matter then came before Judge Sease, presiding at Allendale. By an order dated October 3, 1929, he overruled the respondents' demurrers to his jurisdiction, but dismissed the petition, holding that under the authority he possessed he could "add nothing to Judge Featherstone's authority which was to carry out the instructions of the Supreme Court directing this Court to pass such administrative orders as will carry into effect the order of the Supreme Court"; that the order of Judge Featherstone left the bank in the same situation in which the Supreme Court left it; and that the judgment of the Supreme Court left it just where it was when Judge Mauldin passed his decree in the cause; and that no excusable neglect on the part of the bank was shown that would entitle it to have the judgment opened up.

The defendant bank appeals and files exceptions to the orders of Judge Featherstone and Judge Sease.

One of the contentions of the appellant is that the decree of Judge Featherstone is ambiguous, and that he erred "in not following the decisions of the Supreme Court in setting aside the deed only as against the plaintiff."

As we have already pointed out, this Court, on the former appeal, reversed the judgment of the lower Court, and remanded the case, with instructions that a decree be entered granting the prayer of the complaint; the prayer was that the deed executed and delivered by M. F. Strange to her daughter, Olivia S. Palmer, he declared fraudulent and void as to the plaintiff, and that the deeds he canceled of record. When the matter was heard by Judge Featherstone, he had before him the judgment of this Court, and as stated by him, was controlled by it in making his order.

We do not think that the decree, construed in the light of the admitted facts and circumstances, may be held to be ambiguous. It is true that, in adjudging the deeds to be fraudulent and void, the learned Judge, inadvertently, left out of the decree the words, "as to the Epworth Orphanage of the South Carolina Conference," but in view of the fact that the order stated that its purpose was to carry into effect the judgment of the Supreme Court, its legal effect was to declare the deeds fraudulent and void only as to the plaintiff, and to have them cancled of record accordingly. As between Mrs. Strange and Mrs. Palmer, the grantor and the grantee, the deed in question was good, being voidable only as to the creditors of Mrs. Strange. 27 C. J., 653; *Smith v. Faust,* 107 S. C., 37, 92 S. E., 24.

The further contention that Judge Featherstone erred in not incorporating in the decree, as requested by plaintiff's attorney, that the mortgage of the bank was not affected thereby, is without merit. As it nowhere appeared in the report of the referee, the decree of the Circuit Court, or the opinion of the Supreme Court, that the appellant had a mortgage lien upon any of the lands in question, or that it had been adjudicated in the proceedings to be a valid one, the Circuit Judge properly refused the request. What he incorporated in his order with reference to the matter was merely a statement of the reasons for his refusal.

We hold that the decree of Judge Featherstone set aside the deed in question, as being fraudulent and void, only as against the plaintiff. We do not agree with the appellant that this decree affected or destroyed the lien of its mortgage; if the lien was destroyed or rendered non-enforceable, such effect was due to the acts of the appellant itself, as to which we here express no opinion.

Under the view taken, the question raised with regard to the order of Judge Sease becomes academic. However, we may say, in passing, that he properly refused to modify the decree or to open up the judgment on the grounds stated in the petition.

The orders appealed from are affirmed.

MESSRS. JUSTICES COTHRAN, BLEASE and CARTER, and MR. ACTING ASSOCIATE JUSTICE MENDEL L. SMITH concur.