13692

FEDERAL LAND BANK OF COLUMBIA v. PALMER *ET AL.*

(171 S. E., 481)

Messrs. *T. H. Moffatt, M. Q. M. Marchant, Frank P. McGowan, Harry D. Reed,* and *C. Birnie Johnson,* for appellant,

Messrs. *Patterson & Tobin* and *Searson & Searson,* for respondent,

September 15, 1933.

The opinion of the Court was delivered by Mr. Justice Stabler.

I regret, after careful study and reflection, that I am unable to agree with the conclusions reached by the Chief Justice in his very able opinion in this case. By reference to *Epworth Orphanage v. Strange et al.,* reported in 158 S. C., 379, 155 S. E., 594, it will be found that, after that action was instituted, the land bank, appellant here, was made a party by order of Judge Townsend, on motion of counsel for certain defendants. Pursuant to this order, the complaint was amended by inserting the following paragraph: "That the plaintiff is informed and believes that the Federal Land Bank of Columbia has or claims some interest in or to some of the lands herein described and is made a party defendant that it may come in and set up any rights it may have therein."

Service was then made on the bank, but it failed to answer or otherwise plead. On the contrary, by special arrangement between it and the plaintiff, Epworth Orphanage, "an agreement was made in writing that the bank would not file an answer in the case or participate in the proceedings, and that plaintiff's attorneys would take no decree or order in the cases that would in any manner affect the indebtedness to the bank or the mortgage securing same, but that such mortgage should remain a valid lien on the lands described therein." (For an account of the bank's subsequent efforts to relieve itself of the consequences of its mistake, when it found itself in an undesirable situation because of its failure to assert its rights in the action, see 158 S. C., 379, 155 S. E., 594.)

Upon consideration, I think the bank is unquestionably estopped by its conduct in the *Epworth Orphanage case, supra,* from bringing the present action. Under Judge Townsend's order, it was given its day in Court. It, however, disregarded such order and elected to follow a course of action of its own choosing. In short, it chose to trust its interests

and rights to its agreement with the orphanage, and it must now take its chances under that agreement.

I think the judgment of the Circuit Court should be affirmed.

A majority of the Court agreeing with the views herein expressed, the judgment of the Court is that the order appealed from be, and the same is hereby, affirmed.

MESSRS. JUSTICES CARTER and BONHAM concur.

MR. CHIEF JUSTICE BLEASE (dissenting): The purpose of this action was the foreclosure of a real estate mortgage, executed to the Federal Land Bank of Columbia (hereinafter called the land bank), by Mrs. Olive (referred to sometimes as Olivia) S. Palmer, on March 17, 1923, to secure her promissory note to the land bank in the principal sum of $2,200.00. In addition to the mortgagor, her mother, Mrs. May F. Strange, the Epworth Orphanage of the South Carolina Conference (referred to by us as the orphanage), and the Allendale National Farm Loan Association, were made parties defendant. The farm loan association was alleged to be an indorser on the note. Mrs. Strange and the orphanage were alleged to claim some interest in the mortgaged premises.

The only defendants who answered were Mrs. Palmer and Mrs. Strange. They admitted the execution and delivery of the note and mortgage sued on, but alleged that they were not liable thereon by reason of certain facts set forth in their second, third, fourth and fifth defenses.

In the second defense, it was alleged that the plaintiff was estopped from maintaining the action. In the third defense, that the issues raised were *res adjudicata*. In the fourth, that the plaintiff failed to file an answer, as required by the order of Judge Townsend, in the case of *Epworth Orphanage v. Strange*, had defaulted, and, therefore, could not maintain this action.

In the fifth defense, a counterclaim was set up. It was alleged, (a) that the failure of the plaintiff to file an an-

swer in the case of *Epworth Orphanage v. Strange* caused the defendants trouble, expense, multiplicity of suits, and deprived them of the right to have all issues tried in one action; (b) by way of further harassment and oppressive conduct arising from the transaction in the former case, the plaintiff procured from Epworth Orphanage a refusal to allow the defendants to have assigned to a third party the judgment which the orphanage held against the defendant Mrs. Strange, thus causing a forced sale of certain properties, all of which constituted a breach of the obligation arising out of the contract evidenced by the note and mortgage sued on; and (c), by way of oppressive conduct and breach of contract, the defendants have been injured by the plaintiff in the sum of $5,000.00.

The plaintiff demurred to the affirmative defenses contained in the answer, including the one alleging a counterclaim. Subject to a hearing of the demurrer, it replied to the counterclaim, denying the allegations set forth.

The defendants served notice of framing issues for a jury.

The demurrer of the plaintiff and the motion to frame issues were heard together by his Honor, Judge Stoll. He overruled the demurrer and ordered certain issues to be submitted to the jury. From this order of Judge Stoll, the plaintiff has appealed to this Court.

We shall not undertake to examine the plaintiff's eleven exceptions separately, but will consider what we conceive to be the questions presented thereby, as follows:

1. Is the plaintiff estopped from maintaining this action?

2. Are the issues raised in the action *res adjudicata?*

3. Was the plaintiff required, under the amended complaint in the case of *Epworth Orphanage v. Strange et al.,* to file an answer, and did its failure so to do constitute a bar to the maintenance of this action?

4. Do the facts alleged by the defendants constitute a defense, particularly a counterclaim?

The litigation has continued a long time. Some of the matters involved have been before this Court in two appeals. See *Epworth Orphanage v. Strange et al.* (two cases), 148 S. C., 500, 146 S. E., 414, and *Epworth Orphanage v. Strange et al.,* 158 S. C., 379, 155 S. E., 594. We refer to those decisions for much of the history of the litigation. To clarify somewhat the questions here presented, it is necessary to review, which we hope to do briefly, some of the facts.

The first action was for the sole purpose of setting aside certain deeds executed by Mrs. Strange to her two daughters, Mrs. Palmer and Mrs. Farmer (the latter not a party to the present suit).

On January 29, 1920, Mrs. Strange had purchased a tract of land from the Orphanage, for which she paid a portion of the purchase price in cash, giving her note for the balance, the payment of which was secured by a mortgage on the purchased premises. The credit portion was payable in eight equal annual installments, with interest. After defaulting in payment of the installments due in 1921 and 1922, as well as in the payment of taxes, the orphanage threatened foreclosure. On September 7, 1922, before the filing of the foreclosure suit, Mrs. Strange conveyed four parcels of land (which did not include the tract purchased by her from the orphanage), to her daughters, Mrs. Palmer and Mrs. Farmer, two parcels being conveyed to each of the grantees. One of the tracts conveyed to Mrs. Palmer contained 259 acres. The deed to her was promptly recorded. On March 17, 1923, a loan to her was made by the Federal Land Bank on that tract of land, and the note and mortgage therefor are the ones involved in this action.

Upon learning of the deeds executed by Mrs. Strange to her daughters, the orphanage, on August 3, 1923, instituted an action for the foreclosure of its mortgage, and therein the mortgaged premises were sold in the following October. The land not bringing the amount of the mortgage

debt, a deficiency judgment against Mrs. Strange in favor of the orphanage for $1,544.16 was entered up. Execution was issued thereon and *nulla bona* return made. Thereafter, in May, 1924, the orphanage instituted action against Mrs. Strange and her two daughters, Mrs. Palmer and Mrs. Farmer, for the purpose of having set aside as fraudulent and void the deeds executed to the daughters by Mrs. Strange. In that suit, the orphanage did not cause the land bank, the mortgagee of Mrs. Palmer as to the 259-acre tract, to be made a party. On motion of the defendants in that action, the complaint was required to be amended so as to make the land bank a party defendant, that "it may come in and set up any rights it may have." The land bank did not file an answer. The land bank and the orphanage entered into an agreement, through their respective attorneys, whereby the land bank would not file an answer and the orphanage would not take an order in the case that would affect in any manner the lien of the land bank's mortgage, it being stipulated that the mortgage would remain a valid first lien on the lands described therein.

The suit to set aside the deeds was referred to a special referee, who held that the deeds were valid, and recommended a dismissal of the complaint of the orphanage. The referee's report was confirmed by Judge Mauldin. On appeal to this Court, the decree of the lower Court was reversed, and it was directed to enter a decree granting the prayer of the complaint of the orphanage and to make such administrative orders as might be necessary to carry into effect the judgment of this Court. See 148 S. C., 500, 146 S. E., 414.

Following the filing of the judgment of this Court, the attorneys for the orphanage prepared a proposed decree, which was consented to by the attorneys for the land bank, wherein it was directed that the deeds be set aside, the property sold, and the proceeds arising from the sale be applied on the deficiency judgment in favor of the orphanage. The

proposed decree expressly provided that the sale should not in any manner affect the lien of the mortgage executed by Mrs. Palmer to the land bank, and that the sale should be made subject to the lien of that mortgage.

The proposed decree was served on the attorneys for Mrs. Strange and Mrs. Palmer, with notice that the same would be presented to Circuit Judge Featherstone, then presiding in the Circuit. When the matter came on to be heard before Judge Featherstone, he declined to sign the proposed decree, for the reason, as stated by him, that, under the judgment of the Supreme Court, he could only pass such administrative orders as might be necessary to carry the judgment of this Court into effect. On April 24, 1929, he passed an order adjudging the deeds to be fraudulent and void, and directed that they be canceled on the record. He stated, as there was no mention of the land bank in the decree of Judge Mauldin, which had been reversed by this Court, or in the opinion of this Court in the cause, he did not see that he had anything to do with the land bank, or any lien claimed by it.

Upon receiving information as to the decree of Judge Featherstone, the land bank, on April 29, 1929, presented to Circuit Judge Johnson its petition, praying that the decree of Judge Featherstone be modified so as to protect the lien of its mortgage, and, if necessary, that the decree of Judge Featherstone, in so far as it affected the lien of the land bank's mortgage, be set aside, upon the ground that it was obtained against the land bank by surprise, and through its excusable neglect, and that the land bank be allowed to file an answer in the cause. Judge Johnson, holding himself to be disqualified in the cause, refused to proceed therein, and required the defendants to show cause before Judge Mann why the prayer of the land bank's petition should not be granted. Judge Mann held that he had no jurisdiction, and referred the matter to the presiding Judge at the next ensuing term of the Court of Common Pleas of Allendale County.

Later, the land bank applied to Judge Featherstone, after he had left the Circuit, for a correction of his decree, upon the ground that the same, by clerical error, affected adversely the lien of its mortgage. Thereupon, Judge Featherstone filed a supplemental order, expressing doubt as to his authority to do even that in which he said:

"I did not pass upon any question touching the rights of Federal Land Bank, for the reason that it was not before the Court, and I could not do so. The Bank's rights by way of lien or otherwise, were not referred to in the Circuit Decree, nor in the opinion of Supreme Court; therefore, the case with reference to the Bank, is right where I found it.

"I can see no room, whatsoever, for any contention that my order is ambiguous, or that it cuts off any rights of Federal Land Bank by way of lien or otherwise. If the Bank had any rights in the premises, it still has them. It was most certainly not my intention, by the language employed, to adjudicate any of its rights, nor do I think that the order, properly understood, can have that effect."

The petition of the land bank, the demurrer thereto, return and rules to show cause, finally came on to be heard before Circuit Judge Sease, at the October, 1929, term of the Court of Common Pleas of Allendale County. He passed an order overruling the demurrers, and stated that, if it were proper for him to construe Judge Featherstone's original order, or the original order as supplemented by his second order, he could add nothing to Judge Featherstone's authority, which was to the effect that the instructions of the Supreme Court be carried out. Judge Sease said:

"I hold that Judge Featherstone's order leaves the Federal Land Bank in the same situation as the Supreme Court left it, and the Supreme Court's order left the Federal Land Bank just where it was when Judge Mauldin passed his decree in the cause.

"Can the Federal Land Bank come into this cause now on grounds of excusable neglect? I think not—because there

was no neglect of any kind, but on the contrary the Bank deliberately entered into a contract in which it agreed not to answer, and thereby adopted and followed a course of action which deprived it of the relief which it now seeks to obtain, and I so hold."

From the orders of Judges Featherstone and Sease, the land bank appealed to this Court. See 158 S. C., 379, 155 S. E., 594, 596. Both orders were affirmed. The pertinent language of Mr. Justice Stabler, who spoke for this Court, was as follows:

"We do not think that the decree, construed in the light of the admitted facts and circumstances, may be held to be ambiguous. It is true that, in adjudging the deeds to be fraudulent and void, the learned Judge, inadvertently, left out of the decree the words, 'as to the Epworth Orphanage of the South Carolina Conference,' but, in view of the fact that the order stated that its purpose was to carry into effect the judgment of the Supreme Court, its legal effect was to declare the deeds fraudulent and void only as to the plaintiff, and to have them canceled of record accordingly. As between Mrs. Strange and Mrs. Palmer, the grantor and the grantee, the deed in question was good, being voidable only as to the creditors of Mrs. Strange. 27 C. J., 653; *Smith v. Faust*, 107 S. C., 37, 92 S. E., 24.

"The further contention that Judge Featherstone erred in not incorporating in the decree, as requested by plaintiff's attorney, that the mortgage of the bank was not affected thereby, is without merit. As it nowhere appeared in the report of the referee, the decree of the Circuit Court, or the opinion of the Supreme Court, that the appellant had a mortgage lien upon any of the lands in question, or that it had been adjudicated in the proceedings to be a valid one, the Circuit Judge properly refused the request. What he incorporated in his order with reference to the matter was merely a statement of the reasons for his refusal.

"We hold that the decree of Judge Featherstone set aside the deed in question, as being fraudulent and void, only as against the plaintiff. We do not agree with the appellant that this decree affected or destroyed the lien of its mortgage; if the lien was destroyed or rendered nonenforceable, such effect was due to the acts of the appellant itself, as to which we here express no opinion.

"Under the view taken, the question raised with regard to the order of Judge Sease becomes academic. However, we may say, in passing, that he properly refused to modify the decree or to open up the judgment on the grounds stated in the petition."

In the two appeals to this Court, certain holdings are clear. First, that the deeds from Mrs. Strange to her daughters were good as between grantor and grantee, and voidable only as against the orphanage or other creditors of Mrs. Strange; second, that the decrees and orders of the Circuit Court in no wise affected the lien of the land bank's mortgage; and, third, that the land bank, by reason of its failure to file an answer in the *Orphanage case,* and its agreement with the orphanage not to answer, was estopped to have the provisions embraced in the proposed decree, submitted to Judge Featherstone, incorporated in the Circuit decree.

It is still difficult to see why the land bank appealed from the orders of Judges Featherstone and Sease. The appeals there are explainable only on the ground that they were taken out of an abundance of caution. There was no valid reason for thinking that its rights under its mortgage were affected by those orders. In answer to its fears, Mr. Justice Stabler, speaking for the Court, said: "We do not agree with the appellant [the Land Bank], that this decree affected or destroyed the lien of its mortgage; if the lien was destroyed or rendered nonenforceable, such effect was due to the acts of the appellant itself, as to which we here express no opinion."

All that this Court then held, in so far as the land bank is concerned, was that it could not, in the circumstances, have the judgment of the Court opened up for the purpose of having its then existing rights adjudicated. We can now express the opinion that the lien of the land bank's mortgage was neither destroyed nor rendered nonenforceable by reason of its acts in the *Orphanage case.*

When Mrs. Strange executed and delivered the deeds to her daughters, she thereby divested herself of all right, title, and interest in and to the lands covered thereby, and vested her daughters with fee-simple title therein, subject to the rights of the creditors of Mrs. Strange. At that time, there was no judgment against Mrs. Strange. No foreclosure proceeding against her had been instituted, and no notice of pendency of action filed. Mrs. Palmer's and Mrs. Farmer's deeds were promptly recorded. So far as the records disclosed, Mrs. Palmer was the owner in fee simple of the 259-acre tract of land, free from liens and equities of any kind. By the execution, delivery, and recordation of the deed, Mrs. Strange and Mrs. Palmer made it possible for the land bank to become an incumbrancer for value and without notice. After the execution and delivery of the deed to Mrs. Palmer, Mrs. Strange had no further interest in and to the lands therein and thereby conveyed. The orphanage had a right to ask that the deed be declared void as against it. Mrs. Palmer had the right to defend the rights of her creditor, the land bank, but she had no right to ask for the foreclosure of its mortgage. She had, by the terms of the note and mortgage, given the bank the option to foreclose in certain enumerated instances, but she did not reserve to herself the right to demand that the bank foreclose its mortgage at her pleasure. The land bank had the right to defend its mortgage as against the creditors of Mrs. Strange, on the ground that it was an incumbrancer for value and without notice, but it had no right to ask for the foreclosure of its mortgage, except in the event of a breach of some condition in the note

and mortgage contained. There was no such breach in 1924, when the orphanage instituted its action to have the deeds set aside, nor was there any such breach prior to May 1, 1929. Consequently, when Mrs. Strange (who had no right to do so) and Mrs. Palmer asked that the land bank be made a party to the *Orphanage case,* the land bank had no right that it could assert, except the validity of its mortgage and the priority of its lien, as against the creditors of Mrs. Strange. The reasons advanced at that time by them for asking that the land bank be made a party were to prevent a multiplicity of actions and to protect the lien of the land bank's mortgage. Since the deed from Mrs. Strange to Mrs. Palmer was good as between them, Mrs. Strange had no right to question the validity of the land bank's mortgage. And, we may say in passing, that she was neither a proper nor a necessary party to the instant case. Mrs. Palmer could not deny the validity of her own mortgage, nor is there any evidence that she had any desire to do so, but, on the contrary, she claimed that she wanted that mortgage protected, and she continued to meet the semi-annual payments thereon up to May 1, 1929. Neither she nor Mrs. Strange attacked the validity of the mortgage then, and they now admit its executed and delivery, and do not pretend that it has been paid. The only other persons who could have questioned the validity or priority of the mortgage were creditors of Mrs. Strange. Only the orphanage asserted any claim. It did not attack the validity or priority of the land bank's mortgage, but, on the contrary, expressly admitted its validity and priority in the agreement entered into with the land bank. While the land bank had the right to come in, either by petition or under the terms of the amended complaint, and set up the validity and priority of its mortgage as against the rights of the orphanage, it was not compelled to do so. It was a proper, but not a necessary, party. Had it not been made a party, and the *Orphanage case* proceeded to judgment as it did, the rights of the land

bank would not have been affected. *Warren, Wallace & Co. v. Burton,* 9 S. C., 197. See, also, *Evans v. McLucas et al.,* 12 S. C., 56; *Ex parte, Mobley,* 19 S. C., 337; *Marion County Lumber Co. v. Lumber Co.,* 84 S. C., 505, 66 S. E., 124, 877; *Ex parte, Johnson,* 147 S. C., 259, 145 S. E., 113.

The only way to have procured an order for the sale of the lands embraced in the deeds so adjudged to be fraudulent as against the orphanage, free of the lien of the land bank, was to make the land bank a party to said action. *Ex parte Johnson, supra.* Otherwise, the lands would have been sold burdened with whatever rights the land bank had under its mortgage. Had the land bank answered, the only rights that it could have then asserted were the validity and priority of its mortgage as against the rights of the orphanage. Had that been done, and the decree of the Court passed by Judge Featherstone incorporated the provisions of the proposed decree, which was presented to him, that would not have affected the question now before the Court, to wit, the foreclosure of the mortgage.

It might have been, and we think that it would have been, better practice for the bank to answer and have the validity and priority of its mortgage adjudged as against the rights of the orphanage. Yet its failure to do so did not affect its rights under its mortgage. And since the orphanage, by the agreement it entered into with the land bank, estopped itself from questioning either the validity or priority of the mortgage, virtually the same result was attained as a formal decree of the Court would have accomplished. As the validity of the land bank's mortgage was protected by the agreement entered into by the orphanage and the land bank, one of the purposes which Mrs. Strange and Mrs. Palmer desired to have accomplished by making the land bank a party to the *Orphanage case* had been attained. The other purpose that actuated them in having the land bank made a party to that case was to prevent a multiplicity of actions. Since the mort-

gage could not have been foreclosed in that action, an answer by the land bank in that case setting up the only rights that it could then have set up, to wit, the validity and priority of its mortgage as against the rights of the orphanage, the foreclosure of the mortgage, after default in 1929, would not, and could not, have been prevented.

Had the *Orphanage case* proceeded to judgment without making the land bank a party, had no agreement been entered into between the land bank and the orphanage, then it might have required another action to determine the priority and validity of the land bank's mortgage as against the rights of the orphanage, or the purchaser of the land sold to satisfy the orphanage's judgment. But the possibility of such an action has been prevented by the agreement between the orphanage and the land bank. It appears, then, that all the purposes that Mrs. Strange and Mrs. Palmer desired to have accomplished by making the land bank a party to the *Orphanage case,* and what could have been accomplished by its answering, have been accomplished. Mrs. Palmer's creditor was protected. The validity and priority of her mortgage as against the rights of the creditors of her grantor, Mrs. Strange, have been admitted and preserved.

The present action has arisen, not because the land bank failed to answer in the *Orphanage case* in 1924, but because Mrs. Palmer defaulted in 1929. Had the payments been continued on and after May 1, 1929, as they had been made up to that date, the present action would not have arisen.

In view of the foregoing facts and observations, it is difficult to see how the land bank could be said to be estopped or barred from maintaining the instant case, because of its failure to file an answer in the *Orphanage case.* It is equally difficult to see how it can be said that the issues made in the case were adjudicated in the *Orphanage case* and are now *res adjudicata.*

It is well settled in this State that the essential elements in the doctrine of *res adjudicata* are: (1) Identity of parties;

(2) identity of the subject-matter; and (3) an adjudication in the former suit of the precise question sought to be raised in the second suit. *Johnston-Crews Co. v. Folk et al.*, 118 S. C., 470, 111 S. E., 15, 18; *McConnell v. Davis, Director General*, 128 S. C., 111, 122 S. E., 399; *Brown v. Huskamp*, 141 S. C., 121, 139 S. E., 181; *Baltimore S. S. Co. v. Phillips*, 274 U. S., 316, 47 S. Ct., 600, 602, 71 L. Ed., 1069.

While it may be said that the same parties to the *Orphanage case* are parties to the instant case, if we consider that the land bank was a party to the *Orphanage case,* it does not follow that all the parties to that case were necessary or proper parties. As above pointed out, when Mrs. Strange executed and delivered the deed to Mrs. Palmer, she thereby lost all interest in the lands conveyed thereby. While she was a necessary party in the *Orphanage case,* she is neither a necessary nor proper party to the instant case. There is, therefore, no identity in interest of the parties in the two cases.

But waiving that, and conceding that there is an identity of parties, it cannot be successfully contended that there is identity of subject-matter. In the *Orphanage case* the subject-matter was the validity of the deeds as against the judgment of the orphanage. The only claim that the land bank could assert in that case was the validity and priority of its mortgage as against the claim of the orphanage. The question of foreclosure of the land bank's mortgage, which is the subject-matter of the case at bar, did not, and could not, arise in the *Orphanage case.* It was not, and could not, have been there litigated. The causes of action in the two cases are essentially different and wholly unrelated.

"The effect of a judgment or decree as *res judicata* depends upon whether the second action or suit is upon the same or a different cause of action. If upon the same cause of action, the judgment or decree upon the merits in the first case is an absolute bar to the subsequent action or suit be-

tween the same parties or those in privity with them, not only in respect of every matter which was actually offered and received to sustain the demand, but also as to every ground of recovery which might have been presented. *But if the second case be upon a different cause of action, the prior judgment or decree operates as an estoppel only as to matters actually in issue or points controverted, upon the determination of which the judgment or decree was rendered."* Baltimore S. S. Co. v. Phillips, supra. (Italics ours.)

"If the identity of the parties has been established, but the identity of the cause of action has not, the former judgment is conclusive only as to those issues actually determined; that is, the rule of conclusiveness as to matters which might have been litigated has no application." *Johnston-Crews Co. v. Folk et al., supra.*

We are clearly of the opinion that there was nothing in the *Orphanage case* that would in any view of the case operate as an estoppel or bar to plaintiff in maintaining the instant case.

It remains to consider the counterclaim. Section 468, Vol. 1, Code of 1932, provides that a counterclaim must arise out of one of the following causes of action:

"(1) A cause of action arising out of the contract or transaction set forth in the complaint as the foundation of the plaintiff's claim, or connected with the subject of the action.

"(2) In an action arising on contract, * * * and existing at the commencement of the action."

Let it be remembered that the cause of action in this case is for the foreclosure of a mortgage executed by the defendant Mrs. Palmer to the plaintiff on March 17, 1923, on which that defendant made her semi-annual payments of principal and interest to May 1, 1929; that the alleged cause of action set up in the counterclaim did not arise until some time thereafter. The action by *Orphanage v. Strange et al.,* to set aside the deeds from Mrs. Strange to her daughters,

was not instituted until May 3, 1924. The order of Judge Townsend allowing the complaint to be amended by making the land bank a party defendant, with leave to file an answer, was signed May 8, 1924. The amended complaint was served on the land bank on June 4, 1924. The land bank did not file an answer, but entered into an agreement in June, 1924, with the orphanage that it would not answer, and the orphanage would take no order or decree affecting the lien of the land bank's mortgage, and that the mortgage should remain a valid first lien on the tract of land therein described.

The first paragraph of the counterclaim alleges that the land bank "wilfully and steadfastly, with intent to oppress these defendants, and to cause them added trouble, expense and litigation, refused to plead in the said action, thereby depriving these defendants of their right to have all the said issues determined in one action as ordered by the Court, and imposed upon defendants a multiplicity of suits, and entered into an agreement," etc. The second paragraph of the counterclaim alleges that by "way of further harassment and oppressive conduct against these defendants arising out of the said transaction, procured from the Epworth Orphanage of the South Carolina Conference a refusal on the part of the said Epworth Orphanage to allow these defendants to have assigned to a third party the judgment which the said Epworth Orphanage held against the defendant, M. F. Strange, set up in the action above referred to, when these defendants had procured from a third party the funds necessary for such assignment," etc. The third paragraph of the counterclaim alleges "that by reason of the oppressive conduct and the breach of the said contract herein sued upon by the plaintiff, that these defendants have been injured and damaged * * * in the sum of Five Thousand Dollars."

It is thus seen that the whole counterclaim is predicated upon the failure of the land bank to file an answer in the *Orphanage case,* and upon the alleged procurement by the

land bank from the orphanage of a refusal of the latter to assign its judgment against the defendant, Mrs. Strange, to a third party from whom the defendants had procured "the funds necessary for such assignment."

As hereinbefore pointed out, the land bank was not required to file any answer in the *Orphanage case*. Its failure so to do did not, and could not, constitute a cause of action.

Whether the alleged conduct of the land bank in procuring a refusal from the orphanage to assign its judgment to a third party constitutes a cause of action, we express no opinion. But such conduct did not arise out of the contract or transaction sued on herein, to wit, the note and mortgage, nor was it connected with the subject of the action, but was a separate, independent, and disconnected tort, and not the subject of a counterclaim. *Columbia Nat. Bank v. Rizer*, 153 S. C., 43, 150 S. E., 316, 68 A. L. R., 443.

In the outset, this opinion was prepared by the writer with the view of it becoming the opinion of the Court. A majority of the Court have not agreed with the writer's conclusions, and, accordingly, this becomes a dissenting opinion. The writer regrets his inability to concur with his learned brethren, for whose opinions he entertains the highest respect.

I am impressed very much with a few outstanding facts in this long-continued litigation. Mrs. Strange and her daughters, in the outset, sought to defeat the just claim of the orphanage. In that attempt they were frustrated by the decision of this Court. Failing in that effort, finally Mrs. Strange and Mrs. Palmer sought to take, what appears to me to be, an undue advantage of the Federal Land Bank as to an honest debt. Not only do they wish the land bank's debt canceled, but they desire damages because that institution, when it could do nothing else, sought to collect its debt. Feeling so strongly that this undue advantage should not be allowed, I think it my duty to file this dissenting opinion.